J-A01001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LESHON A. MARTIN, | |
| Appellant | No. 537 EDA 2017 |

Appeal from the Judgment of Sentence July 14, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0002616-2015

BEFORE:  LAZARUS, J., OTT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED APRIL 04, 2018**

Appellant, Leshon A. Martin, appeals from the judgment of sentence imposed following his conviction of driving under the influence (DUI) of marijuana.[1]  We affirm.

We take the following facts from our independent review of the certified record.  Lieutenant James McCarrick, the DUI coordinator for the Philadelphia Police Department, established a checkpoint at 301 East Allegheny Avenue from 10:00 P.M. on Friday, July 11, 2014, through 4:00 A.M. on Saturday, July 12, 2014.  Police briefly stopped every vehicle that drove past the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(d)(1).

location, as a matter of standard procedure. At 12:01 A.M., on July 12, 2014, Officer Mary Novack of the Philadelphia Police Department stopped Appellant at the checkpoint. Based on his bloodshot, watery eyes, slow speech, and the odor of marijuana in the car, the officer asked him to perform field sobriety tests, which he failed. After police gave him his **O'Connell**[2] warnings, Appellant agreed to a blood draw.

On May 4, 2015, Appellant filed a pre-trial motion to suppress all evidence on the bases that the roadblock was unconstitutional and his statements to police were made without his having received the required **Miranda**[3] warnings. (**See** Omnibus Motion, 5/04/15, at unnumbered pages 2-3; N.T. Hearing, 7/08/15, at 5). The court denied the motion and, on May 5, 2016, a jury convicted Appellant of DUI.

On July 13, 2016, Appellant filed a sentencing memorandum notifying the court that he would make a motion for extraordinary relief at sentencing, challenging the voluntariness of his blood test (for the first time), on the basis

_____

[2] An **O'Connell** warning specifically informs a motorist that his or her driving privileges will be suspended for one year if he or she refuses chemical testing. **See Com., Dept. of Transp., Bureau of Traffic Safety v. O'Connell**, 555 A.2d 873, 877 (Pa. 1989); (**see also** Warnings to be Given by Police, 7/12/14).

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

of **Birchfield v. North Dakota**, 136 S. Ct. 2160 (2016).[4]  At sentencing, on July 14, 2016, Appellant made the motion, which the court denied.  The court sentenced Appellant as a third time DUI offender, to the mandatory minimum term of not less than one nor more than two years' imprisonment, followed by three years of probation.

On July 25, 2016, Appellant filed a post-sentence motion, again raising **Birchfield**.  After argument and extensive briefing by the parties, the court denied the motion on December 13, 2016.  Appellant timely appealed.[5]

Appellant raises three issues for this Court's review:

> 1.  Whether the trial court erred in denying Appellant['s] Motion to Suppress his stop, search and arrest and all of the fruits that followed from said stop as a result of a constitutionally defective road block/checkpoint in that the choice of time and place for the checkpoint was not based on local experience as to where and when intoxicated drivers are likely to be traveling[?]
>
> 2.  Whether the trial court erred in finding the issue of whether the Commonwealth of Pennsylvania was required to obtain a search warrant for Appellant['s] blood sample was waived by him due to the failure to raise the issue until the **Birchfield** case was decided and prior to sentencing[?]

---

[4] On June 23, 2016, the Supreme Court decided **Birchfield**, holding that criminalizing a suspect's refusal to consent to a blood test violates the Fourth Amendment to the United States Constitution.  **See Birchfield**, **supra** at 2186.

[5] On February 7, 2017, Appellant filed a timely court-ordered statement of errors complained of on appeal.  The court filed an opinion on March 20, 2017. **See** Pa.R.A.P. 1925.

3. Whether the trial court erred in refusing to apply . . . **Birchfield** . . . where the Commonwealth of Pennsylvania is required to obtain a search warrant in order to obtain Appellant['s] blood sample, despite the fact the trial occurred prior to the decision in **Birchfield**, but before Appellant . . . was sentenced and where the issue was not raised until the time of sentencing and in all post-trial submission filings[?]

(Appellant's Brief, at 11) (emphasis omitted).[6]

In his first issue, Appellant challenges the denial of his motion to suppress evidence on the basis of the unconstitutionality of the DUI checkpoint. (**See id.** at 20-29). This issue is waived.

It is well-settled that our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Further,

[w]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

**Commonwealth v. Powell**, 171 A.3d 294, 310 (Pa. Super. 2017) (citations and quotation marks omitted).

. . . [T]o be constitutionally acceptable, a checkpoint must meet the following five criteria: (1) vehicle stops must be brief and must not entail a physical search; (2) there must be sufficient warning of the existence of the checkpoint; (3) the decision to conduct a checkpoint, as well as the decisions as to time and place for the checkpoint, must be subject to prior administrative approval; (4) the choice of time and place for the checkpoint must be based on

_____

[6] We have reordered Appellant's questions for ease of disposition.

local experience as to where and when intoxicated drivers are likely to be traveling; and (5) the decision as to which vehicles to stop at the checkpoint must be established by administratively pre-fixed, objective standards, and must not be left to the unfettered discretion of the officers at the scene.

***Commonwealth v. Worthy***, 957 A.2d 720, 725 (Pa. 2008) (citation omitted). "Substantial compliance with the [above] guidelines is all that is necessary to minimize the intrusiveness of a roadblock seizure to a constitutionally acceptable level." ***Commonwealth v. Menichino***, 154 A.3d 797, 802 (Pa. Super. 2017), *appeal denied*, 169 A.3d 1053 (Pa. 2017) (citation and footnote omitted).

Instantly, Appellant challenges the fourth prong of the above test. (***See*** Appellant's Brief, at 29) (arguing the Commonwealth failed to establish that the location of the DUI checkpoint "was a route likely to be travelled by intoxicated drivers."). However, at the hearing on the suppression motion, counsel expressly argued that the Commonwealth failed to establish prongs three and five, "prior administrative approval" of the checkpoint, and "administrative objective standards" for which vehicles to stop. (N.T. Suppression, 7/08/15, at 34-35; ***see id.*** at 33-36).

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). This requirement bars an appellant from raising "a new and different theory of relief" for the first time on appeal. ***Commonwealth v. York***, 319 Pa. Super. 13, 465 A.2d 1028, 1032 (1983).

- 5 -

*Commonwealth v. Wanner*, 158 A.3d 714, 717 (Pa. Super. 2017).

Therefore, Appellant's first claim is waived.[7]

In his second issue,[8] Appellant alleges that the trial court erred in finding that he waived the *Birchfield* issue. (*See* Appellant's Brief, at 11, 29, 40-44).

> In Pennsylvania, it has long been the rule that criminal defendants are not entitled to retroactive application of a new constitutional rule unless they raise and preserve the issue during trial. [*See*] *Commonwealth v. Newman*, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*), *appeal denied*, 121 A.3d 496 (Pa. 2014). . . .

*Commonwealth v. Moyer*, 171 A.3d 849, 855 (Pa. Super. 2017) (some citation formatting provided).

_____

[7] Moreover, it would lack merit. Lieutenant McCarrick testified that he is "responsible . . . for the administration and operation of DUI checkpoints [for Philadelphia]." (N.T. Suppression, at 8). He scheduled the checkpoint for 10 P.M. on Friday, July 11, 2014, through 4:00 A.M. Saturday, July 12, 2014, based on statistical evidence showing that the number of DUI arrests "skyrocket" during this time. (*Id.* at 13). He selected the location based on statistics about the significant number of DUI arrests in that area. (*See id.* at 8). Finally, the area could safely accommodate the roadblock. (*See id.* at 8-9). Therefore, based on this evidence, we conclude that the trial court did not abuse its discretion in denying Appellant's suppression motion. *Powell*, *supra* at 310.

[8] In violation of Pennsylvania Rule of Appellate Procedure 2119(a), although Appellant raises three questions in his statement of questions involved, he appears to address his second and third issues together. (*See* Appellant's Brief, at 11, 29-44); *see also* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). However, because we are able to discern his arguments, we will not find waiver on this basis.

Here, Appellant failed to challenge his consent to the warrantless blood draw during trial, and he concedes that he raised **Birchfield** for the first time after his conviction. (**See** Appellant's Brief, at 40). As stated above, Appellant "[is] not entitled to retroactive application of a new constitutional rule unless [he] raise[d] and preserve[d] the issue during trial." **Moyer**, **supra** at 855 (citation omitted). In fact, **Birchfield**'s retroactive application was raised in **Moyer**, **supra**, under similar circumstances to those presented here, and failed. The **Moyer** Court observed:

> . . . Appellant argues that the trial court erred in declining to vacate her DUI conviction under **Birchfield**. As explained above, the United States Supreme Court handed down **Birchfield** two days after Appellant's sentence. Appellant never challenged the warrantless blood draw during trial, and did not raise any issue under **Birchfield** until her *nunc pro tunc* post-sentence motion. In Pennsylvania, it has long been the rule that criminal defendants are not entitled to retroactive application of a new constitutional rule unless they raise and preserve the issue during trial. [**See**] **Commonwealth v. Newman**, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*), *appeal denied*, 632 Pa. 693, 121 A.3d 496 (2014). The **Newman** Court relied on **Commonwealth v. Cabeza**, 503 Pa. 228, 469 A.2d 146, 148 (1983). There, the Supreme Court wrote:
>
> > [W]here an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved **at all stages of adjudication** up to and including any direct appeal.
>
> *Id.* (emphasis added). Instantly, Appellant failed to challenge the warrantless blood draw at any stage of the litigation prior to her *nunc pro tunc* post-sentence motion. Thus, she is not entitled to retroactive application of **Birchfield**.

Appellant argues that she should not have been required to anticipate the United States Supreme Court's **Birchfield** opinion. The same could be said, however, in nearly every case in which a defendant is denied retroactive application of a new constitutional principle. The rule permitting retroactive application was created for the benefit of defendants who raised and preserved the issue in question and in whose case the issue remained pending while a higher court decided the issue in a similar case. The **Cabeza** Court explained:

> In both cases, a defense challenge to the ruling was raised during trial and the issue preserved and argued in post trial motions and on appeal. The only noteworthy difference between [**Commonwealth v. Scott**, 496 Pa. 188, 436 A.2d 607 (1981),] and the appellee is that **Scott** was argued and decided first. The instant case may well have been the case which overruled prior law if **Scott** had not been decided while appellee's appeal to the Superior Court was pending. The question of whether to apply an enlightened rule in favor of a discredited one should not be determined by the fortuity of who first has his case decided by an appellate court.

> **Id.**

> In contrast, Appellant's case could not have been the case that invalidated warrantless blood draws coerced by the threat of criminal prosecution **because Appellant never raised the issue**. Absent further development of the law of retroactivity from the Pennsylvania Supreme Court, Appellant is not entitled to rely on **Birchfield**. . . .

**Moyer**, **supra** at 854-55 (some emphases added).

We agree with the reasoning employed by **Moyer** and find it dispositive.[9] Instantly, similar to the defendant in **Moyer**, Appellant failed to

_____

[9] We recognize that, in **Moyer**, the defendant was sentenced two days prior to the **Birchfield** decision, and, here, **Birchfield** was decided after Appellant's

challenge the validity of his consent until after his conviction and ***Birchfield***'s disposition. Therefore, necessarily, Appellant did not have a consent issue that was pending the United States Supreme Court's holding in ***Birchfield***. Hence, Appellant was not entitled to ***Birchfield***'s retroactive application, and the trial court properly declined to reverse Appellant's conviction. ***See id.*** Appellant's second issue does not merit relief.[10]

Because we conclude that Appellant was not entitled to ***Birchfield***'s retroactive application, we likewise conclude that his third issue lacks merit. However, for the sake of completeness, we will address his claim that, "[a]s the ***Birchfield*** Court held that the practice of criminalizing the failure to consent to blood testing . . . was unconstitutional, the trial court improperly relied upon section 3804(c)(1) in imposing a mandatory minimum sentence upon [him]." (Appellant's Brief, at 43).

Our standard of review is well-settled.

> Initially, we note [a] claim that implicates the fundamental legal authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. Issues relating to the

---

conviction, but before sentencing. However, this timing is not dispositive to the reasoning of the ***Moyer*** Court and its applicability to the case herein.

[10] The trial court declined to extend ***Birchfield*** based on waiver. Because Appellant raised ***Birchfield*** soon after it was decided, and before he was sentenced, we decline to find that Appellant waived the claim. (***See*** Trial Ct. Op., at 7). However, "[w]e can affirm the trial court's decision if there is any basis to support it. ***Commonwealth v. Sunealitis***, 153 A.3d 414, 423 (Pa. Super. 2016) (citation omitted).

legality of sentence are questions of law, and thus, our standard of review is *de novo* and our scope of review is plenary.

Moreover, in construing statutes, we are guided by the rules set forth in the Statutory Construction Act of 1972.

The object of all interpretation is to ascertain and effectuate the intent of the [legislature], a task that is best accomplished by considering the plain language of the [statutes] at issue. However, when the words are not explicit, then the court must consider various other indicia of intent, such as the object and necessity of the rule and the mischief meant to be remedied. The [statutes] should be construed to give effect to all their provisions, and a single [statute] should not be read in a vacuum, especially where there is an apparent interrelationship among [the statutes].

[I]n ascertaining legislative intent, courts may apply, *inter alia,* the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain.

*Commonwealth v. Clarke*, 70 A.3d 1281, 1284 (Pa. Super. 2013), *appeal denied*, 85 A.3d 481 (Pa. 2014) (citations, footnote, and quotation marks omitted).

Here, Appellant was convicted of violating section 3802(d)(1) of the DUI statute. Section 3802(d)(1) provides:

**(d) Controlled substances.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act;

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii) metabolite of a substance under subparagraph (i) or (ii).

75 Pa.C.S.A. § 3802(d)(1).  Section 3804, Penalties, provides, in pertinent part:

**(c) Incapacity; highest blood alcohol; controlled substances.—**An individual who violates section 3802(a)(1) and refused testing of breath under section 1547 (relating to chemical testing to determine amount of alcohol or controlled substance) or testing of blood pursuant to a valid search warrant **or** an individual who violates section 3802(c) or (d) shall be sentenced as follows:

\* \* \*

(3) For a third or subsequent offense, to:

(i) undergo imprisonment of not less than one year[.]

75 Pa.C.S.A. § 3804(c)(3)(i) (emphasis added).[11]  After the United States Supreme Court decided **Birchfield**, this Court has found that, "pursuant to

_____

[11] Similarly, section 3803, Grading, reads, in pertinent part:  "An individual who violates section 3802(a)(1) where the individual refused testing of blood or breath, **or** who violates section 3802(c) or (d) and who has one or more prior offenses commits a misdemeanor of the first degree."  75 Pa.C.S.A. § 3803(b)(4); **see also** 2017 S.B. 961, 75 Pa.C.S.A § 3803(b) (amending statute, *inter alia*, to remove language, "refused testing of blood").  Because our analysis applies equally to both section 3803 and section 3804, we confine our discussion to section 3804(d), above.

*Birchfield*, in the absence of a warrant or exigent circumstances justifying a search, **a defendant who refuses to provide a blood sample when requested by police is not subject to the enhanced penalties provided in 75 Pa.C.S.A. §§ 3803–3804**." *Commonwealth v. Giron*, 155 A.3d 635, 636 (Pa. Super. 2017) (emphasis added and footnote omitted).

Appellant maintains that *Giron* compels a finding that the trial court improperly imposed an illegal sentence by relying on section 3804(c). However, we disagree.

By its plain language, the penalties provided by section 3804 are to be applied in two separate scenarios: either to a driver that commits DUI-General Impairment and refuses a blood test **OR** to an individual who violates DUI-Controlled Substances. *See* 75 Pa.C.S.A. § 3804(c). *Giron* is inapposite to this case because it merely observed that a defendant who refuses a blood test cannot be subject to the enhanced penalties of section 3804. *See Giron*, *supra* at 636-37, 640. The case does not address the situation before us, where a third time DUI-Controlled Substances offender is subject to a mandatory minimum sentence. *See id.* In fact, Appellant does not provide any case law, and we are not aware of any, that finds that an individual convicted of a third violation of DUI-Controlled Substances, is not subject to the mandatory minimum sentence provided by section 3804(c).

Therefore, we conclude that, based on the plain meaning of section 3804(c), the trial court did not impose an illegal sentence on Appellant. *See*

***Clarke***, ***supra*** at 1284. The court imposed a mandatory minimum sentence based on Appellant's third DUI conviction for violating section 3802(d), not an illegal enhancement for refusing a blood test.[12] ***See id.*** Hence, ***Birchfield***'s prohibition on criminal sentencing enhancements for refusal to consent to a blood test is not implicated by Appellant's sentence, and his illegal sentencing claim fails.

Judgment of sentence affirmed.

Judge Ott joins the Memorandum.

Judge Lazarus files a Concurring and Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/18

---

[12] We reiterate that Appellant did not refuse the blood test.